In the Matter of LE CLUB, INC., Respondent, *v.* STATE LIQUOR AUTHORITY, Appellant, and POLICE DEPARTMENT OF THE CITY OF NEW YORK, Respondent.

First Department, December 17, 1963.

*Bartholomew A. Moynahan* of counsel (*Hyman Amsel,* attorney), for appellant.

*Charles H. Tuttle* of counsel (*Colby Stilson* and *Thomas A. Shaw, Jr.,* with him on the brief; *Breed, Abbott & Morgan,* attorneys), for Le Club, Inc., respondent.

*Per Curiam.* The State Liquor Authority appeals from an order made in an article 78 proceeding annulling its determination refusing renewal of a club liquor license to petitioner and directing issuance of the license.

We conclude that the determination of the Authority was not arbitrary or capricious (cf. *Matter of Fiore* v. *O'Connell,* 297 N. Y. 260, 262). The consideration of an application for renewal of such a license is to be regarded in the same manner as one for a new license. (*Matter of Restaurants Longchamps* v. *O'Connell,* 271 App. Div. 684, 686, affd. 296 N. Y. 888.) In reviewing the exercise of such discretionary power by the Authority the inquiry of the courts is limited to a determination whether the record discloses circumstances which leave no possible scope for the reasonable exercise of discretion by the Authority. (*Matter of Wager* v. *State Liq. Auth.,* 4 N Y 2d 465, 468.) We further conclude, however, that for reasons hereinafter stated the matter should be remanded to the Authority.

The renewal application was denied upon findings, among others, that the licensee was not conducting a bona fide club in accordance with the provisions of subdivision 9 of section 3 of the Alcoholic Beverage Control Law and that it had permitted one Coquelin, a person not mentioned in the license, to avail himself thereof in violation of the terms of the license and section 111 of the same law.

The then current license of petitioner was renewable on March 1, 1963. In early January of that year the Authority instituted a proceeding by appropriate notice for a nonrenewal interview. During the previous year the Authority had received numerous complaints from residents in the area of the licensed premises and at least one item had appeared in the public press discussing an incident at the club. During the period from May to November, 1962 the Authority had caused investigations to be made as to the operations of petitioner and the control, supervision and finances of this membership corporation.

There was adequate proof at the nonrenewal interview from which the Hearing Commissioner found that in early 1961 Coquelin and a group of individuals commenced activity for the formation of a social club. Thereafter, a stock corporation (416 East 55 Street Corp.) was organized. Coquelin acquired all its capital stock and became its president. This corporation then obtained a lease for 15 years of a building at the address indicated by its corporate name at an annual rental of $14,000. In September, 1961 petitioner was incorporated as a membership corporation and Coquelin was elected its president and treasurer. The stock corporation then sublet to petitioner the 55th Street premises for a period of two years at the same rental the former was paying. The sublease, however, contained no renewal provision. In November, 1961 petitioner and Coquelin entered into a written contract whereby the latter was hired for five years as manager of the club for an annual salary of $25,000 plus $5,000 annually for expenses. It is significant that in July, 1962 Coquelin informed an Authority investigator that he had arranged for the sublease to contain no renewal privilege so that he (Coquelin) would be protected in the event petitioner attempted to dispense with his services.

In December, 1961 petitioner was granted a club liquor license but prior thereto Coquelin resigned as president of petitioner but continued as treasurer. An examination of the books and records of petitioner by the Authority in the Summer of 1962 revealed that the balance sheet as of March 31 of that year showed a deferred charge of " organization expense " in the sum of $8,134.50. Inquiry revealed that the greater part of this

amount consisted of two items — one of $5,189.60 for Coquelin's expenses for a trip to France and a second amount of $2,395.32 owed Coquelin for "setting-up" expenses. The books also showed "pre-opening expenses" totaling $29,525.10. An item designated "rent" in the amount of $8,323.80 was found by the investigator to include rent for 11 months for Coquelin's private apartment. An item labeled "miscellaneous" included Couquelin's personal expenses in New York for the last five months of 1961 in the sum of $3,676.09.

It was explained to the investigator that three of these amounts were expenses by Coquelin "to promote good will". It was claimed that the rent was a proper disbursement as Coquelin used his apartment as an office. At the renewal hearing Coquelin testified that the trips to Europe were necessary to discuss club business with directors who were abroad and to recruit nonresident members.

The report of this investigator reveals further evidence of the failure of petitioner to operate as a bona fide club. The by-laws provided that the affairs of the club should be conducted by a board of 15 governors. In July, 1962 there had been no meeting of the club membership. There were only five members (including Coquelin) serving as governors and these individuals were the officers of the executive committee. These same persons with two or three other members had advanced substantial sums of moneys to enable the club to commence operations.

These and other facts supply ample proof that during the first year of operation the club was for all practical purposes under the control and domination of Coquelin. This conclusion is fortified by the remedial action taken by petitioner after the notice of January 2, 1963 that a nonrenewal interview would be held one week later. Hearings were held on January 9 and 15 and completed on January 23. On January 17 Coquelin assigned his 100% stock holdings in 416 East 55 Street Corporation to petitioner and resigned as treasurer of the membership corporation. On the same date Coquelin's contract with petitioner was renegotiated so as to reduce his annual salary to $20,000. A lump-sum payment of $4,200 was agreed upon for past-due expenses of nearly $16,000 and the former fixed sum of $5,000 annually for expenses was eliminated. At the same time the membership of petitioner's board of governors was filled to the required number of 15.

Whether this belated activity was the result of the normal course of events or was a final desperate effort of petitioner and Coquelin to preserve respondent's license was a matter for determination by the Authority. We may not weigh the evidence.

Our search is to ascertain whether there was a possible scope for the reasonable exercise of discretion by appellant. Most certainly there was and the determination of the Authority was neither arbitrary nor capricious.

We conclude, however, that in the exercise of discretion the proceeding should be remanded to appellant. Nearly a year has passed since the making of its determination. The record obviously does not disclose what new facts, if any, should be considered by the Authority on a further hearing.

The order annulling the Authority's determination should be reversed, on the law, without costs, and the matter remanded to the Authority for further proceedings in accordance with this opinion.

BOTEIN, P. J., BREITEL, McNALLY, STEUER and BASTOW, JJ., concur.

Order, entered on March 28, 1963, unanimously reversed, on the law, without costs, and the matter remanded to the State Liquor Authority for further proceedings in accordance with the opinion Per Curiam of this court filed herein.